IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANTHONY DUNCAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Civil No. **06-4042-JPG** |
| | ) |
| **UNION PACIFIC RAILROAD,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

**PROUD, Magistrate Judge:**

Before the Court is plaintiff Anthony Duncan's motion to "strike and disavow" his August 17, 2006, deposition testimony. **(Doc. 25).** Also before the Court is the defendant's response in opposition. **(Doc. 29).**

Plaintiff's counsel[1] terminated the deposition after, as plaintiff describes it, his testimony contradicted "even the most basic facts involving the events." As plaintiff's counsel explained in concluding the deposition:

> There's been a break in the deposition, at which time Tony Duncan and I talked about the facts of this case and what his testimony has been. He has reviewed information he gave us before, including the police report, and, at this point, he is so confused we are going to terminate the depo, and try to find a way to retake it after he goes back to his physician. He's testifying there is no fog. Obviously, there's fog. It's in the police report. His facts on this are so diametrically opposed to what we know to be true, and to what he has indicated to us before that he is not lucid enough to continue this deposition, and any

---

[1]The Court notes that plaintiff's counsel at the deposition was Nancy Richards, and the deposition was taken at the offices of Kujawski & Nowak, where plaintiff's counsel practices. After plaintiff had testified about the events leading up to the accident, a break was taken and plaintiff's counsel of record in this case, John Kujowski, stepped in and terminated the deposition. **(Doc. 25, Exhibit 1 (hereinafter "Tr."), p. 67).**

1

>information he gives the railroad– and they have every right to ask these questions– is not reliable. It's untrustworthy and I do not see how I can proceed in good faith at this point, given his frame of mind. . . . [B]ut I have no idea if he would give you his correct name at this point.

**(Tr. 67-68).**

A subsequent affidavit by plaintiff, submitted in support of the subject motion, intimates that severe head trauma suffered two and a half years earlier in the train accident at issue, and his failure to review any documents or records prior to the deposition, contributed to his contradictory deposition testimony. In his affidavit, plaintiff now unequivocally states there was "severe" fog; he did not hear any horns or other sounds, or see lights indicating the approach of the train; and he did not see or hear the train until he was upon the train, at which time he swerved violently to avoid the train. **(Doc. 25, Exhibit A).**

The police report states in pertinent part that the reporting officer "had trouble getting to the scene due to extremely heavy fog in places with visibility being so poor that [the officer] could barely see the roadway," but as the officer "got closer to the scene the visibility had improved but the fog was still very heavy." **(Doc. 25, Exhibit 2).** The officer further reported that skid marks, believed to be from plaintiff's vehicle, measured 37 feet 8 inches leading to the rail. **(Doc. 25, Exhibit 2).** Plaintiff struck the ninth railcar to the rear of the engine, an estimated 800 feet; and the train was purportedly traveling at around the 10 mph limit. **(Doc. 25, Exhibit 2).** The officer also observed a round railroad crossing sign just south of the crossing which was not obstructed from the view of oncoming traffic. **(Doc. 25, Exhibit 2).**

In contrast, plaintiff's deposition testimony can be summarized as follows. At approximately 5:30 a.m. on February 18, 2004, plaintiff left his house for work in his jeep; it was dark as he drove on Highway 148 from outside Mt. Vernon toward his work place in Cahokia;

there was fog, and he thinks his headlights were on high. **(Tr., pp. 29-37).** According to plaintiff, as he turned onto the Wells Bypass, about two blocks before the railroad crossing, the fog was not such that he could not see to make the turn. **(Tr., pp. 40-41).** Plaintiff testified that he saw the train when he was within approximately 50 feet, but he did not recall seeing the crossing lights flashing, but one had to look hard to see the lights because they were obstructed by trees and brush– maybe eight feet tall by one signal and four or five feet tall by another. **(Tr., pp. 45- 50).** When shown pictures taken the morning of the accident, plaintiff thought they generally depicted the scene as it was at the time of the accident, except for the trees and brush. **(Tr., pp. 47-48).** Plaintiff described seeing the side of the train; he slammed on the brakes and turned hard to the right; the vehicle slid and the left front corner hit the train; and, as best as he can recall, his Jeep bounced off the train and he knew he was in trouble. **(Tr., pp. 51-52).** Plaintiff lost consciousness. **(Tr., p. 52).**

As a preliminary matter, it is noted that all objections to any or part of the deposition were reserved, and the signature of the deponent was waived at the start of the deposition. **(Tr., pp. 1 and 3).** Federal Rule of Civil Procedure 30(e) provides that a deponent may make changes in "form or substance" to his or her deposition within a 30 day period following the preparation of the transcript. The deponent must sign a statement of the changes and the reasons given for making them, which is appended to the transcript. **Fed.R.Civ.P. 30(e).** As the Court of Appeals for the Seventh Circuit explained in *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000), the trier of fact is then left to evaluate the honesty of the alteration. "[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Id.* At trial a

deponent can always attempt to explain the difference between what he said and what he meant. *Id.* Therefore, the appellate court has characterized such an attempt to clarify or remove a question created by one's deposition testimony as a foolish tactic, which only tends to draw attention to the muddle. *Id.* Plaintiff now merely presents a variation of this same foolish tactic, apparently premised solely upon equitable principles.

Rather than follow the procedure set forth in Rule 30(e), plaintiff has opted to file the subject motion and affidavit. Plaintiff does not actually want to change his deposition testimony, he wants to completely disavow it, rendering it a nullity. Plaintiff cites no procedural rule or precedent for such a "do-over." Plaintiff's arguments for why his deposition testimony is unreliable are not well taken.

Defense counsel clearly explained to plaintiff that he should speak up if he did not understand a question, that he was being asked about his personal knowledge, he should not guess at answers, he should state if he does not remember something or does not know the answer. **(Tr., pp. 11-12).** Plaintiff also stated that he was not under the influence of any drug or medication and had not taken any in the past year. **(Tr., p. 13).** Plaintiff was on Social Security disability and not working. **(Tr., pp. 13-14).** In response to some questions, plaintiff did actually indicate he did not know the answer, did not recall, or would only be guessing if he answered– just as he was instructed. As the questioning went on, plaintiff specifically stated that he was answering based on his own recollection, not what someone else told him. **(Tr., pp. 38-39).** At no point during the questioning did plaintiff's counsel, attorney Richards, object that plaintiff's mental status was impaired, or that he was in any way incompetent to testify.

The assertion that plaintiff's testimony contradicted uncontested facts– like whether

there was fog– is incorrect. Plaintiff testified that there was fog, but that he was able to see near the crossing. The police officer described having trouble getting to the scene due to extremely heavy fog in places, but he also stated that near the scene of the accident visibility improved. These statements are not diametrically opposed as plaintiff asserts. Similarly, plaintiff's testimony that he first saw the train from a distance of approximately 50 feet is generally consistent with the police report, which recorded skid marks beginning approximately 38 feet from the crossing. Plaintiff's description of seeing a railcar (not the engine) already at the crossing, hitting the brakes, turning hard and bumping the train with his left front bumper all jive with the police report. Plaintiff also testified that he did not hear or see anything warning him of the train, which he now reaffirms in his affidavit. The glaring difference between plaintiff's deposition testimony and the police report and photos of the scene relates to the visibility of any signs or signals. Plaintiff describes tall brush, which is diametrically opposed to the report and pictures. However, contradictory deposition testimony on this point does not logically mean that plaintiff's testimony is in whole or in part unreliable. Plaintiff could be correct, mistaken or lying.

  It is suggested that plaintiff was somehow medically impaired to testify. Medical records from March 1, 2004, approximately 10 days after the accident, reflect that plaintiff suffered a closed head injury, characterized as a "severe trauma," and "severe neurological deficits." **(Doc. 25, Exhibit 3).** However, during the deposition, plaintiff stated that he had not ben treated by a doctor or healthcare provider in a year– when a "brain specialist" sent him to a cognitive retraining center. **(Tr., p. 23).** Plaintiff also stated that he could not go back to work because he does not "have it all up in [his] head like [he] used to," and he cannot perform physical labor, but

5

there is no indication in the transcript that he was not competent to testify. **(Tr., p. 24).** The first suggestion that plaintiff's testimony was unreliable and/or that he was incompetent to testify did not occur until after a break in the deposition during which plaintiff conferred with other counsel and became too confused to continue. Despite indicating he would consult a physician about his confusion, plaintiff has not submitted any supporting medical records or affidavits that are relevant to his condition in August 2006. Therefore, plaintiff's sudden-onset confusion is suspect.

By submitting an affidavit that contradicts plaintiff's deposition testimony, plaintiff has compounded the muddle. A subsequent affidavit may not be used to contradict a witness's deposition and/or create a question of fact. **Thorn, 207 F.3d at 389; Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996); Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995).** "However, supplemental affidavits can be employed to clarify ambiguous or confusing deposition testimony." **Buckner, 75 F.3d at 292.** As analyzed above, portions of plaintiff's affidavit are in direct contradiction of his deposition testimony, while other parts can be generously characterized as clarifying his testimony. Unfortunately, as in *Buckner*, plaintiff appears to be attempting to immunize himself from earlier admissions and the effect of his deposition testimony with unambiguous assertion of fact.

There is no equitable basis for permitting plaintiff to disavow his deposition testimony; plaintiff has failed to utilize Rule 30(e) to change his deposition testimony; and there is now a partially contradictory affidavit in the record. As in *Thorn*, *Russell* and *Buckner*, plaintiff will have to proceed on this muddled record.

**IT IS THEREFORE ORDERED** that plaintiff's motion to "strike and disavow" his August 17, 2006, deposition testimony **(Doc. 25)** is **DENIED**.

**IT IS FURTHER ORDERED** that if defendant so elects, it is hereby **GRANTED** leave to continue the deposition of plaintiff, which was improperly terminated by plaintiff.

**IT IS SO ORDERED.**

**DATED: October 19, 2006**

                                                **s/ Clifford J. Proud**
                                                **CLIFFORD J. PROUD**
                                                **U. S. MAGISTRATE JUDGE**